```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____           │
│ DATE FILED: 1/22/2021                │
└─────────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SONIA GARCIA MESTIZO & MAURA
AMASTAL,

                              Plaintiffs,

        -against-

H2 CANDY & NUTS, INC. D/B/A SWEET
RAINBOW, HISHAM AL-ASSAF, *individually and
as an officer of H2 Candy & Nuts, Inc.*, &
HAYTHAM KHALIL, *individually and as an officer
of H2 Candy & Nuts, Inc.*,

                              Defendants.

---

No. 17-cv-8519 (NSR)
OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge Román

        Plaintiffs Sonia Garcia Mestizo ("Mestizo") and Maura Amastal ("Amastal," together

"Plaintiffs") bring this action against their former employer, Defendant H2 Candy & Nuts, Inc.

("H2CN") d/b/a Sweet Rainbow, Defendant Hisham Al-Assaf ("Al-Assaf"), individually and as

an officer of H2CN, and Defendant Haytham Khalil, individually and as an officer of H2CN

(collectively, "Defendants"), alleging violations of Title VII of the Civil Rights Act of 1964

("Title VII"), 42 U.S.C. § 2000e *et seq*, the New York State Human Rights Law

("NYSHRL"), New York Executive Law § 290, *et seq.*, the retaliation and recordkeeping[1]

requirements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 211(c), and the retaliation

and wage statements requirements of the New York Labor Law ("NYLL") § 195(3). (ECF No.

1.)

        Presently before the Court is Plaintiffs' motion and Defendants' cross-motion for

---

[1] Plaintiffs indicate in their introductory statements that they are bringing claims pursuant to the recordkeeping requirements of FLSA; however, Plaintiffs do not elaborate on any such claims and instead appear to bring recordkeeping claims pursuant only to NYLL.

summary judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 57 & 62.) For the following reasons, Plaintiffs' motion and Defendants' cross-motion for summary judgment are DENIED.

## BACKGROUND

The following facts are derived from the parties' respective Local Rule 56.1 statements and the record and are undisputed unless otherwise indicated.

Defendants Khalil and Al-Assaf own Defendant H2CN. (Pls' Local Rule 56.1 Statement ("Pls. 56.1") ¶ 6; Defs.' Response to Pls.' 56.1 ("Defs. 56.1 Resp.") ¶ 6 (ECF No. 66-2).) Defendants Khalil and Al-Assaf are President and Vice President of Defendant H2CN and have the power to hire, fire, and discipline employees. (Al-Assaf Tr. 11:7-12; 20:3-15; Khalil Tr. 25:25-26:3; 31:10-15.) Plaintiffs worked for Defendants as candy packers. (Pls. 56.1 ¶ 2, 13; Defs. 56.1 Resp. ¶ 2, 13.) Plaintiff Mestizo began working for Defendants in December 2011. (Mestizo Tr. 17:17-20.) Plaintiff Amastal began working for Defendants approximately eleven years prior to her deposition. (Amastal Tr. 12:7-9.) Plaintiffs were born in Mexico and are of Mexican origin. (Pls. 56.1 ¶ 1, 12; Defs. 56.1 Resp. ¶ 1, 12.) The manager of the candy packers was a Filipino woman named Vicky. (Pls. 56.1 ¶ 5; Defs. 56.1 Resp. ¶ 5.)

Plaintiffs' last day working for Defendants was September 1, September 2, or September 4, 2016. (Pls. 56.1 ¶ 3, 16; Defs. 56.1 Resp. ¶ 3, 16.)[2] At the time, Defendants paid Plaintiffs a flat salary of $65 per day in cash. (Pls. 56.1 ¶ 4, 14; Defs. 56.1 Resp. ¶ 4, 14.) On their last day, Plaintiffs and a group of approximately five additional candy packers spoke with Defendants Khalil and Al-Assaf regarding a salary increase from $65 per day to either $75 per day or $80

---

[2] Defendants indicate that Plaintiffs' final day could have been September 1, 2019, but given the context and timing of the lawsuit, the Court interprets this to be a typo and to mean September 1, 2016.

per day. [3] (Pls. 56.1 ¶ 1, 12, 44; Defs. 56.1 Resp. ¶ 1, 12; Pls. 56.1 ¶ 44; Defs. 56.1 Resp. ¶ 44.)

This group of approximately seven total employees constituted all candy packer employees

except their manager Vicky. (Pls. 56.1 ¶ 7; Defs. 56.1 Resp. ¶ 7.) All of the negotiating candy

packer employees were Mexican women. Defendant Khalil offered to increase the candy

packers' salary to $70 per day. (Mestizo Tr. 30:2-6; Amastal Tr. 20:4-5; Defs. 56.1 Resp. ¶ 9)

Defendants told the employees that they could not afford to pay the candy packers $80 per day.

(Pls. 56.1 ¶ 30; Defs. 56.1 Resp. ¶ 30.) According to Plaintiff Amastal, Defendant Khalil told

Plaintiffs that they could leave if they did not agree to the offered raise. (Amastal Tr. 20:2-10.)

According to Plaintiff Mestizo, Plaintiff Mestizo told Defendant Khalil that "the fact that we

didn't have any papers, that didn't mean we had no rights; we still have rights." (Mestizo Tr. 3

30:21-31:2.)

       According to Plaintiffs, Defendant Al-Assaf joined the conversation after approximately

ten minutes. (Amastal Tr. 21:2-10.) The candy packers indicated that if they did not receive their

desired increase, they would leave. (Mestizo Tr. 33:9-13.) Defendant Al-Assaf then became

upset and told the candy packers "to just leave the place." (Mestizo Tr. 33:6-32:8.) Defendant

Al-Assaf told the women that he would not give them their desired increase and that if they

wanted to go, they could because Defendants had other people who would work for less money.

(Amastal Tr. 21:2-10.) Defendants dispute this characterization of the conversation. According to

Defendant Al-Assaf, Plaintiffs left when Defendants refused to give them a raise to $80 per day

and Defendants attempted to convince the Plaintiffs to come back. (Al-Assaf Tr. 40:6-21.)

Consistent with Defendants' claims, Marcella Toxqui, one of the negotiating candy packers,

stated at her deposition that the candy packers were not fired and that they "wanted to leave

---

[3] According to Defendants, Plaintiffs originally asked for an increase to $70 per day in July 2016 and
Defendants agreed to raise their pay in September. (Al-Assaf Tr. 22:14-20; Khalil Tr. 79:19-80:2.)

because [Defendants] didn't want to give us a raise." (Toxqui Tr. 38:14-25.) Toxqui did not return to work the following day, but ultimately rejoined H2CN. (Toxqui Tr. 39:12-15.)

As the Plaintiffs left and gathered their belongings, Defendant Al-Assaf told them to get out and made a comment as to their Mexican heritage. According to Plaintiff Mestizo, Defendant Al-Assaf said: "Just get out of here, you fucking Mexicans. I don't need you." (Mestizo Tr. 3:14-21.) According to Plaintiff Amastal, Defendant Al-Assaf said: "Go Mexicans." (Amastal 25:20-22.) According to Defendant Al-Assaf, he said: "Go! Go! They are Mexicans." (Al-Assaf Tr. 47:20-25.) Also, according to Defendant Al-Assaf, the derogatory statement was made after the women were outside the door of the company. (Al-Assaf Tr. 47:20-25.)

The salary increase conversation was recorded by Marcella Toxqui, a candy packer. (Pls. 56.1 ¶ 11; Defs. 56.1 Resp. ¶ 11.) The recording is part of the record.[4] In the recording, Plaintiffs and Defendants negotiate salary and other terms of employment for approximately twenty-five minutes. Towards the end of the recording Defendant Al-Assaf yells at the Plaintiffs: "Go! Go! Mexicans! . . . They are Mexicans!" (Pls. 56.1 ¶ 32; Defs. 56.1 Resp. ¶ 32.) The recording confirms some of Plaintiffs' and Defendants' testimony as to the substance of the conversation; however, it is unclear at times and difficult to decipher. It is clear from the Court's review of the recording that there were substantial language barriers throughout the conversation. This is consistent with Toxqui's testimony that she recorded the conversation because Defendants only spoke English and the candy packers only spoke Spanish. (Toxqui Tr. 17:8-12.)

The New York State Department of Labor (NYSDOL) later conducted an investigation and determined that Defendant H2CN owed back wages to five current and four former employees, including Plaintiffs, and failed to keep proper business records. (Al-Assaf Tr. 51:21-

---

[4] The recording is properly admissible as an opposing party's statement. See FRE 801(d)(2)(A).

52:4.)

## LEGAL STANDARD

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013).

A court should grant summary judgment when a party who bears the burden of proof at trial "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323 (internal quotation marks omitted).

In deciding a motion for summary judgment, the Court must "constru[e] the evidence in the light most favorable to the non-moving party and draw[ ] all reasonable inferences in its favor." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (internal quotation marks omitted). However, the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation." *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (internal citation and quotation marks omitted). Further, "[s]tatements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *see Holcomb v. Iona Coll.,* 521 F.3d 130, 137 (2d Cir.2008) ("Even in the discrimination context

. . . a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment.").

"In cases based on allegations of discriminatory retaliation, courts must use 'an extra measure of caution' in determining whether to grant summary judgment 'because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence.' *Thompson v. Morris Heights Health Ctr.*, 2012 WL 1145964, at *4 (S.D.N.Y. Apr. 6, 2012) (quoting *Schiano v. Quality Payroll Sys., Inc*., 445 F.3d 597, 603 (2d Cir.2006) (citation omitted)).

## DISCUSSION

## I.     Title VII Discrimination Claims

Title VII provides that an employer cannot discriminate against "any individual" based on his or her "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). "The ultimate issue in any employment discrimination case is whether the plaintiff has met her burden of proving that the adverse employment action was motivated, as least in part, by an impermissible reason, i.e., that there was discriminatory intent." *Baffa v. STAT Health Immediate Medical Care, P.C.*, 2013 WL 5234231, at *7 (E.D.N.Y. Sept. 17, 2013) (internal quotes omitted) (citing *Fields v. N.Y. State Office of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 119 (2d Cir. 1997).

On a motion for summary judgment in a case wherein a plaintiff asserts that the employer's decision was a pretext for discrimination, the plaintiff's discrimination claim is subject to the *McDonnell Douglas* burden-shifting standard. *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015). Under this framework, a plaintiff bears the initial burden of demonstrating her *prima facie* case. *Cortes v. MTA N.Y. Transit*, 802 F.3d 226, 231 (2d Cir.

2015). "To establish a *prima facie* case of discrimination under Title VII, a plaintiff must prove that (1) she is a member of a protected class; (2) she is qualified for the position held; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination." *Stratton v. Dep't for the Aging for N.Y.C.*, 132 F.3d 869, 878 (2d Cir. 1997) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). To establish an inference of discrimination, a plaintiff must prove that an adverse employment action was taken against her "because of discriminatory animus on the part of [her] employer." *See Belfi v. Prendergast*, 191 F.3d 129, 139 (2d Cir. 1999).

"The burden of proof that must be met to permit an employment-discrimination plaintiff to survive a summary judgment motion at the *prima facie* stage is *de minim[i]s.*" *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) (internal quotation marks omitted) (citing *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1994)). Once a plaintiff demonstrates a *prima facie* case, a "presumption arises that the employer unlawfully discriminated." *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001). The burden "shifts to the employer to give a legitimate, non-discriminatory reason for its actions." *McDonnell Douglas Corp.*, 411 U.S. at 802. If the employer articulates a non-discriminatory reason for its actions, the presumption of discrimination is rebutted and it "simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11 (1993).

The "final and ultimate burden" then returns to the plaintiff to demonstrate that "defendant's reason is in fact [a] pretext for unlawful discrimination." *See Cortes*, 802 F.3d at 231. The plaintiff must "produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not the discrimination was the real reason for the employment

action." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (internal quotation marks omitted) (citation omitted). Alternatively, a plaintiff may meet its final burden by relying on direct or indirect evidence demonstrating that "an impermissible reason was a motivating factor, without proving that the employer's proffered explanation played no role in its conduct." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 81 (2d Cir. 2001) (internal quotations omitted) (quoting *Fields v. N.Y. Office of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 120 (2d Cir.1997)). "In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination." *Weinstock*, 224 F.3d at 42.

   A.   *Number of Employees*

   Title VII of the Civil Rights Act of 1964 applies to employers with "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 18 U.S.C. § 2000e(b). Defendants argue that H2CN had fewer than fifteen employees during the relevant time period and is therefore not an employer within the meaning of Title VII. (ECF No. 65 at 4-5.) As evidence, Defendants first assert that "the New York State Department of Labor [("NYSDOL")] certified that at no time did the Defendants employ more than nine (9) employees from October 5, 2013 through October 12, 2017." (*Id*. at 5.) (citing NYS Labor Documents at 1, ECF No. 58-7.) In opposition, Plaintiffs argue that the NYSDOL did not certify that Defendants only employed nine employees, but rather determined that five current and four former employees were owed back wages. (ECF No. 60-4 at 6.)

   Second, Defendants point to their own testimony that they employed no more than nine employees during the relevant time period. (*Id*. (citing Khalil Tr. 31:16-18; Al-Assaf Tr. 10:11-12, ECF No. 68-2).) Plaintiffs argue this testimony is inadequate because Defendants only testified as to the number of employees employed by H2CN at the time of the depositions, not

the number employed at the time the discrimination allegedly occurred. (ECF No. 60-4 at 7.)

Finally, Defendants point to Plaintiffs' Affirmation and Rule 56.1 statement, which indicate that the group of seven to nine employees who requested a salary increase represented all employees except Vicky. In response, Plaintiffs argue that Defendants are mincing Plaintiffs' words and that "all employees" was in reference to all candy packers and "did not account for any other administrative staff, truck drivers, accountants, or etc." (ECF No. 60-4 at 7.)

Upon review of the record, the Court finds that there is no evidence demonstrating that H2CN had fifteen or more employees during the relevant time period. As such, Plaintiffs fail to meet their burden in proving this material element.

While Defendants offer evidence to demonstrate that H2CN had fewer than fifteen employees, they also fail to meet the burden required to prevail on summary judgment. Both Defendants testified that H2CN employed nine employees *at the time of their depositions*, not at the time of the alleged discrimination. *See Rovira v. New York Apparel Sales*, 2002 WL 1471557, at *3 (E.D.N.Y. May 31, 2002). Further, while the NYSDOL documents analyze Defendants' obligations to nine current and former employees, they do not state that Defendants employed nine employees during the relevant time period. Finally, Defendants argument that Plaintiffs' assertions that "all employees" except Vicky negotiated salary implies that Defendants employed fewer than fifteen employees also fails. This interpretation of Plaintiffs' words contradicts Plaintiffs' testimony that there were other employees besides the candy packers. (Mestizo Tr. 22:23-25, ECF No. 58-2 at 8.) The most reasonable interpretation of Plaintiffs' words is therefore that *all candy packer employees except Vicky* negotiated salary. Therefore, there is a genuine dispute as to the number of employees employed by Defendants at the time the alleged discrimination occurred, and therefore a factual dispute prevents the Court from

determining whether H2CN is subject to Title VII.

   *B. Prima Facie Case*

   To make a prima facie case, Plaintiffs must show that (1) they are members of a protected

class, (2) they are qualified for the position held, (3) they suffered an adverse employment

action, and (4) the adverse employment action occurred under circumstances giving rise to an

inference of discrimination.

   The parties agree that Plaintiffs are members of a protected class and were qualified for

the position they held. Further, Defendants do not dispute that the alleged adverse employment

action occurred under circumstances giving rise to an inference of discrimination. As such, the

only disputed issue is whether Plaintiffs suffered an adverse employment action.

   **1.      Adverse Employment Action**

   Plaintiffs argue they were fired by Defendants. (ECF No. 58-9 at 8.) They argue that

"Defendant Al-Assaf admits he yelled 'Go! Go! Just Go! They are Mexicans . . . They are

Mexicans' at Plaintiffs when they approached Defendants about their pay." (*Id.*) Plaintiffs also

argue "it is undisputed that after [Plaintiffs] were told to 'Go!', [Plaintiffs] left the premises" and

neither Plaintiffs nor Toxqui returned to work the next day. (*Id.*) Plaintiffs also point to Plaintiff

Amastal's testimony that "we didn't want to leave the job. We were just threatening, because we

wanted to show him that we were indispensable and that he should increase our salary" and that

Defendants "threw us out." (ECF No. 60-4 at 13; Amastal Tr. 21:22-25, 22:20-25.)

   Further Plaintiffs argue that even if they were not terminated, they were constructively

discharged because their boss yelled at them with anti-Mexican animus while negotiating their

wages, which were in violation of New York State minimum wage. (*Id.*) Plaintiffs argue this

treatment made working conditions "so difficult and unpleasant that a reasonable person in their

shoes would certainly have felt compelled to resign" and that Toxqui testified that Plaintiffs were treated like animals. (*Id*.)

Finally, Plaintiffs argue that "adverse employment actions can occur after a separation of employment has already happened," although Plaintiffs fail to articulate what adverse employment action other than termination allegedly occurred here.[5] (ECF No. 60-4.)

Defendants argue that Plaintiffs "voluntarily left their employment on or about September 1, 2016 after a failed negotiation to get a raise in their salary to $80 per day." (ECF No. 65 at 12.) Defendants point to both Defendants' and Plaintiffs' testimony that they informed Defendants they would quit if they did not get the requested raise. (*Id*. at 13; Mestizo Tr. 30:9-13; Amastal Tr. 20:20-22; Al-Assaf Tr. 39:22-23, 40:6-14). Defendants argue that they "attempted to dissuade Plaintiffs from quitting, characterized them as 'family'" stated that they "wanted them to remain at the company," and that they would give them a raise to $80 per day in the future if they could afford it. (*Id*. at 13.) Defendants also point to Toxqui's testimony in which she stated that she later returned to work after the incident "because they didn't fire us. We decided to leave the job" and "Well, no one fired us there. We wanted to leave because they didn't want to give the raise." (ECF No. 66 at 3.) Defendants further argue that Plaintiffs cannot establish that they were constructively discharged because it is a demanding standard that requires intolerable working conditions. Defendants argue that Plaintiffs' merely make a conclusory statement that they were treated like animals without any specific examples to demonstrate an intolerable environment. (*Id*.)

Plaintiffs have the burden of establishing a prima facie case; however, the burden at this

---

[5] Plaintiffs cite to a case in which the Court found that an employer's challenge to unemployment insurance can constitute an adverse employment action. However, there is no such challenge in this case and all of Plaintiffs arguments revolve around Plaintiffs' termination being the alleged adverse employment action.

stage is *de minimis*. In this case, the Plaintiffs have offered sufficient evidence to meet their burden. Both Plaintiffs testified that they were told to leave. Further, Defendants admit, and the recording reveals, that Defendant Al-Assaf told Plaintiffs to go. Defendants argue that Plaintiffs threatened to quit if they were denied their requested raise. This is a standard bargaining tactic. When Defendants offered Plaintiffs a raise to $70 per day, Defendants did not storm out. Rather, they attempted to continue negotiations and Defendants told Plaintiffs to leave, at which point the Defendants left.[6] Even if Plaintiffs were gathering their things and leaving on their own volition—which could have merely been a bargaining tactic to show that they were serious about the negotiation—it is undisputed that Defendant Al-Assaf screamed at the Defendants to go while they were doing so. Defendants rely heavily on Toxqui's testimony that "no one fired us" to demonstrate that there was no adverse employment action. However, Toxqui admitted that she does not understand English and did not recall parts of the conversation. While Defendants' evidence may persuade a jury that Plaintiffs quit and were not terminated, Plaintiffs have offered sufficient evidence to make a *prima facie* showing.

### C.  *Legitimate, Non-Discriminatory Reason for Termination*

After Plaintiffs demonstrate a *prima facie* case of discrimination, the burden shifts to the Defendants to provide a legitimate, non-discriminatory reason for termination. Defendants argue that "they could not afford to raise the salaries of seven (7) employees from $65.00 to $80.00 per day." (ECF No. 65 at 14.) Plaintiffs argue that Defendants' rationale is "problematic because Defendants are required to pay their employees a proper minimum wage under New York Labor Law, something that Defendants were not doing at the time Plaintiffs asserted their rights as

---

[6] Plaintiffs also argue that their departure constitutes a constructive discharge. *See Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir. 1983). Because the Court finds that Plaintiffs have met their burden in demonstrating that they were terminated, the Court will not address this argument.

employees." (ECF No. 60-4 at 14.) Defendants argue that "[n]on-compliance with applicable wage law does not rise to the level of a 'legitimate, non-discriminatory reason.'" (*Id*. at 14-15.) Further, Plaintiffs argue that Defendants' proffered rationale does not explain why Defendant Al-Assaf yelled "Go! Go! Just Go! They are Mexicans" at Plaintiffs. (*Id*. at 15.)

The Court agrees that a defendant's inability to pay the minimum wage required by law cannot be a legitimate reason for an adverse employment action. However, there is a genuine question of material fact as to whether Defendants terminated Plaintiffs due to an inability to pay minimum wage. The parties agree that during the negotiation conversations, Defendants offered to pay Plaintiffs $70 per day. Plaintiffs did not accept Defendants' offer, attempted to negotiate a higher salary of $80 per day, and were ultimately terminated after Defendants failed to offer a salary of more than $70 per day. Given these facts, Defendants purported rationale for termination was their inability to pay more than $70 per week, not $65 per week. The NYSDOL documents appear to indicate that Plaintiff Amastal was underpaid by $5 per week when she was paid $65 per day. Therefore, it is unclear to the Court whether a rate of $70 per day would have been in violation of minimum wage laws. Because the record has not been fully developed in this regard, the Court finds that there is a genuine issue of material fact as to whether Defendants offer a legitimate, non-discriminatory reason for termination.[7]

D. *Role of Unlawful Discrimination in Termination*

The burden now shifts to Plaintiffs to demonstrate that Defendants' purported rationale for termination is pretext or that unlawful discrimination was an impermissible factor in

---

[7] Plaintiffs additionally argue that Defendants' proffered reason does not explain why Defendant Al-Assaf made a derogatory remark regarding Plaintiffs' Mexican heritage. Plaintiffs' argument is misplaced; at this stage Defendants need only demonstrate a legitimate rationale for termination. In the third stage of the *McDonnell Douglas* framework, Plaintiffs can rebut Defendants' rationale with evidence that discrimination was nonetheless a factor in the termination.

Defendants' termination of Plaintiffs. Plaintiffs argue that due to the "anti-Mexican remarks made during Plaintiffs' termination . . . . [i]t is axiomatic that Plaintiff's Mexican national origin was a large factor, if not the actual reason for their termination." (ECF No. 58-9 at 10.)

Defendants argue that the anti-Mexican remark "does not say the Plaintiffs were terminated *because* they were Mexican, but rather states a fact of what their national origin status is." (ECF No. 65 at 15.) As such, Defendants argue "there is no nexus between the adverse employment action and Plaintiffs['] status as Mexicans." (*Id*.) Defendants also point to Toxqui's testimony where she stated that she did not think her Mexican heritage could have been a part of a reason for termination. (*Id*.) Defendants further indicate that the five other negotiating candy packers, including Toxqui, later returned to work after the incident. (*Id*.) Defendants further argue that the anti-Mexican statement was made by Defendant Al-Assaf after the workers were leaving. (*Id*.)

In response, Plaintiffs argue that Toxqui's testimony lack credibility because she is a current employee of H2CN and is under Defendants' pressure. (ECF No. 60-4 at 16.) Further, Plaintiffs argue that Toxqui's interpretation of why Defendants terminated Plaintiffs is not relevant because she "could not know what was going through Defendant Al-Assaf's mind when he made the anti-Mexican statement." (*Id*.)

Upon examination of the record, the Court finds that there is a genuine dispute of material fact as to whether discrimination played a role in the termination of Plaintiffs. Defendants offer significant evidence that Plaintiffs were terminated due to their requested pay raise. For instance, all of the approximately seven candy packers were of Mexican origin and many of the candy packers had worked for Defendants for several years. Plaintiff Amastal began working for H2CN eleven years prior to her deposition and identified all former and current

candy packers as being of Mexican heritage. (Amastal Tr. 14:18-16:11.) Further, five out of the seven of the terminated candy packers—all of whom were Mexican—eventually returned to work for H2CN after the failed negotiation. These facts make it difficult to infer anti-Mexican animus on the part of Defendants because Defendants regularly hired Mexican employees and, in fact, re-hired five out of seven of the terminated Mexican employees.

Further, the circumstances surrounding Plaintiffs' termination support Defendants' claim that the rationale for termination was the inability to afford to provide a raise. The Defendants did not approach Plaintiffs and terminate them while yelling anti-Mexican remarks. Rather, Plaintiffs approached Defendants regarding a pay raise and gave Defendants an ultimatum. Defendants provided a counteroffer that Plaintiffs deemed insufficient. Defendants then told Plaintiffs to go.

Nonetheless, the reference to Plaintiffs' Mexican origin cannot be ignored. Although Defendants argue they used the term as a descriptor, references to origin are often made in a derogatory manner. Defendant Al-Assaf could have yelled "Go! Candy packers!" but instead he referred to Plaintiffs' origin, reiterating "They are Mexican!" In this context, Defendant Al-Assaf unnecessarily referred to Plaintiffs' heritage and did so while yelling at them to "Go!" Therefore, it is conceivable to the Court that Plaintiffs' Mexican national origin or race could have played a role in their termination. Because there is a genuine dispute of material fact, this factual determination is best reserved for jury.

Accordingly, Plaintiffs' motion and Defendants' cross-motion for summary judgment of these claims are denied.

## II.    NYSHRL Discrimination Claim

The Second Circuit has held that "claims brought under New York State's Human Rights

Law are analytically identical to claims brought under Title VII."[8] *Torres v. Pisano*, 116 F.3d 625, 629 n.1 (2d Cir. 1997); *see Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011); *Salomon v. Our Lady of Victory Hosp.*, 514 F3d 217, 226 n.9 (2d Cir. 2008). As such, the above analysis applies to Plaintiffs' NYHRL claims and the Court denies Plaintiffs' motion and Defendants' cross-motion for summary judgment.

## III.   Retaliation Claims

FLSA and NYLL retaliation claims "are subject to the three-step burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Santi v. Hot in Here, Inc.*, 2019 Wl 290145, at * 3-4 (S.D.N.Y. Jan. 22 2019) (citing *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010). Under this framework, the plaintiff has the initial burden of presenting a *prima facie* case of discrimination showing: "(1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Santi*, 2019 WL 290145 at *4 (citing *Mullin*, 626 F.3d at 53).

Once the plaintiff has presented a prima facie case, "the defendant has a burden of production to articulate some legitimate, nondiscriminatory reason for the adverse action." *Santi*, 2019 WL 290145 at *3 (citing *Brock v. Casey Truck Sales, Inc.*, 839 F.2d 872, 876 (2d Cir. 1988) (citations and quotation marks omitted). Finally, "the plaintiff has the burden of persuasion to prove by a preponderance of the evidence that the improper reason was the true reason." *Id.*

### A.  Prima Facie Case

---

[88] The only distinction is that, at the time this case was file, the NYSHRL applied to employers with four or more employees. As such, Plaintiffs do not need to establish that Defendants employed fifteen or more employees at the time of the alleged discrimination to prevail on these claims.

**1.**       **Participation in a Protected Activity, Known to Defendant**

Plaintiffs argue that the candy packers approached Defendants "and made an unequivocal assertion of their rights to proper wages." (ECF No. 58-9.) Specifically, Plaintiff Mestizo stated "we also have rights as workers and it is not rights based on the time worked with you but rights about since the time you hire a person, you know they have rights just like you have rights." (*Id.*) Defendants argue that Plaintiff Mestizo's statement was insufficient in that she failed to articulate the actual right or protected activity. (ECF No. 65 at 17-18.)

"[A]n employee may premise a [FLSA] retaliation action on an oral complaint made to an employer, so long as . . . the complaint is 'sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Dunn v. Sederakis*, 143 F. Supp. 3d 102, 110 (S.D.N.Y. 2015) (citing *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 107 (2d Cir. 2015) (quoting *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011). Explicit invocation of FLSA rights is not necessary to put an employer on notice. *Dunn*, 143 F. Supp. 3d at 112 (citing *Greathouse*, 784 F.2d at 116).

In this case, although Plaintiff Mestizo did not explicitly invoke her FLSA rights, the Court finds that her assertion was sufficiently clear to put Defendants on notice. Plaintiff Mestizo referenced her rights, and the rights of her fellow candy packers, during a lengthy negotiation about the candy packers' daily pay. When Defendants refused to increase their pay to their desired salary, she argued that "they have rights." In the context of the conversation, it follows logically that Plaintiff Mestizo was referring to the candy packers' right to be paid a proper wage.

Defendants argue that even if Plaintiff Mestizo did sufficiently assert the candy packers'

rights, the Plaintiffs did not have a right to $80 per day. (ECF No. 65 at 18.) Defendants also assert that the candy packers had previously approached them in July 2016 regarding their salary and Defendants had agreed to give the candy packers a raise to $70 per day effective September 2016. (*Id*.) Defendants' argument is irrelevant. Plaintiffs merely need to assert their rights to make a *prima facie* retaliation case; Plaintiffs do not need to show that their rights were in fact violated. Further, as Plaintiff Mestizo articulated, the right to a proper wage applies retroactively. That is, Defendants' offer to raise Plaintiffs' wages in September 2016—even if to an amount satisfying minimum wage requirements—does not cure Defendants' failure to previously provide Plaintiffs with a proper wage.

### 2. Employment Action Disadvantaging Plaintiffs

As discussed above in the Title VII analysis, the Court finds that Plaintiffs have met their low *prima facie* burden to demonstrate that Defendants terminated their employment during the negotiation.

### 3. Causal Connection Between Protected Activity and Adverse Employment Action

"The causal connection needed for a *prima facie* case can be "established indirectly by showing that the protected activity was closely followed in time by the adverse action." *Chamberlin v. Principi*, 247 F. App'x 251, 254 (2d Cir. 2007) (quoting *Lovejoy-Wilson v. NOCO Motor Fuel Inc.*, 263 F. 3d 208, 224 (2d Cir. 2001)). Shortly after Plaintiff Mestizo asserted her rights during wage negotiations, the candy packers were told to go and their employment was terminated. The proximity in time between Plaintiff Mestizo's assertion of rights and termination is sufficient to show a causal connection between the protected activity and adverse employment action.

B. *Legitimate, Non-Discriminatory Reason for Adverse Action*

Both parties failed to brief their motion and cross-motion for summary judgment on this claim beyond the establishment of the *prima facie* case. Because the retaliation claim follows the same *McDonnell Douglas* burden-shifting framework as Plaintiffs' discrimination claims, the Court will apply the same arguments and analysis here. As such, the Court finds that the Defendants' inability to provide a raise to Plaintiffs is a legitimate, non-discriminatory reason for termination.

C. *Improper Reason for Termination Was True Rationale*

Again, both parties failed to brief this element of the retaliation burden-shifting framework. After examining the record, the Court finds that there is a genuine dispute of material fact as to whether Plaintiffs' assertion of their rights was the true reason for termination. The proximity and time between Plaintiffs' invocation of their rights and Defendants' termination of Plaintiffs suggests that retaliation could have played a role in the termination. However, an inability to pay a higher salary is also a valid and common reason for termination. As such, the Court finds this issue is best left to a jury. Plaintiffs' motion and Defendants' cross-motion for summary judgment on the retaliation claims are therefore denied.

**IV.    Record Keeping Claims**

NYLL's Wage Theft Prevention Act ("WPTA") requires an employer to provide employees, in writing, information including the employee's rate of pay, the names of any employers, and the employers' contact information. N.Y. Lab. Law § 195(1)(a). Employees "may recover in a civil action damages of fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees." N.Y. Lab. Law § 198(1-b). Plaintiffs argue that Defendants

do not dispute they failed to provide the required written notice and that Defendants admitted in their depositions that they were unaware of what a pay notice or wage statement is. (ECF No. 58-9 at 12.)

In response, Defendants argue that New York law provides a defense to § 195(1)'s requirements where (i) there was complete and timely payment of all wages due to the employee(s) who did not receive proper notice and (ii) the employer reasonably believed in good faith that it was not required to comply with § 195(1)'s notice requirements. (ECF No. 65 at 19 (citing N.Y. Lab. Law § 198(1-b))). Defendants argue that they paid Plaintiffs in a timely fashion. (*Id.*) Defendants additionally argue that "the amended pleadings do not allege sufficient facts to put Defendants on notice that [P]laintiffs were bring claims under Section 195(1)." (*Id.* at 20.)

In their reply, Plaintiffs incorrectly assert that "Defendants did not oppose Plaintiffs' motion for summary judgment on the New York Labor Law Wage Theft Prevention Act." (ECF No. 60-4 at 20.) In their reply, Defendants reiterate their affirmative defense and their argument that the Complaint does not allege sufficient facts. (ECF No. 66 at 5.)

The Court finds that Plaintiffs plead sufficient facts in their amending pleadings. The Amended Complaint clearly alleges that the Plaintiffs were "always paid in cash in an envelope; [they] never received a pay check, pay stub, *statement of wages, or any other documentation evidencing [their] earnings."* (ECF No. 47 at 4, 6) (emphasis added). The Court further finds that there is a genuine dispute of material fact as to whether Plaintiffs were provided with the required documents and, if they did, whether Defendants are eligible for their argued affirmative defense. Although Defendants' lack of awareness of what a pay notice or wage statement is suggests that Defendants likely did not provide such documentation to Plaintiffs, when viewing

the facts in a light most favorable to the non-moving party, the Court believes the evidence to be insufficient to prevail in summary judgment. Further, Defendants assert that they are eligible for an affirmative defense because they paid Plaintiffs timely wages and believed in good faith that they did not have an obligation to provide the documents required under § 195(1). In viewing the evidence in a light most favorable to Plaintiffs, there is insufficient evidence for the Court to rule at this stage that Defendants are entitled to the defense. Therefore, Plaintiffs' motion and Defendants' cross-motion for summary judgment as to Plaintiffs' WTPA claims are denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion and Defendants' cross-motion for summary judgment are DENIED. A pretrial conference is hereby scheduled for March 3, 2021 at 3:00 pm to be held via teleconference unless otherwise directed by the Court. To access the teleconference, please follow these directions: (1) Dial the Meeting Number: (877) 336-1839; (2) Enter the Access Code: 1231334 #; (3) Press pound(#) to enter the teleconference as a guest. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 57.

Dated:   January 22, 2021
   White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge